FILED
DES MOINES, IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

02 NOV 12 PM 2:52

SOUTHERN DISTRICT OF IA

| | | |
|---|---|---|
| NORTHERN NATURAL GAS COMPANY and NORTHERN BORDER PIPELINE COMPANY, | ) ) ) ) ) | CIVIL ACTION |
| **Plaintiffs,** | ) ) ) | NO. 4:01-CV-70473 |
| vs. | ) ) ) | |
| DIANE MUNNS, MARK O. LAMBERT, and ELLIOTT SMITH, Individually in their Official Capacity as Members of the Iowa Utilities Board, | ) ) ) ) ) | PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR COMPLETE SUMMARY JUDGMENT |
| **Defendants.** | ) ) ) ) | |

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1(a)(3), Plaintiffs state that the following

material facts are undisputed:

<u>**Parties**</u>

1.    Northern Natural, a corporation organized and existing under the laws of the State

of Delaware with its principal place of business located in Omaha, Nebraska, is an interstate natural

gas pipeline company that owns and operates a 17,000-mile interstate pipeline transmission system

for the transportation of natural gas in interstate commerce primarily in the midwestern United

States, including Iowa.  <u>See</u> Complaint ¶ 5; Answer ¶ 5.

2.    Northern Border, a Texas general partnership whose general partners are Northern

Border Intermediate Limited Partnership and TC PipeLines Intermediate Limited Partnership (both



Delaware limited partnerships) and having its principal place of business located in Omaha, Nebraska, is an interstate natural gas pipeline company that owns and operates a 1,214-mile interstate pipeline system for the transportation of natural gas in interstate commerce from the Montana-Canada border to markets in the midwestern United States, including Iowa. See Complaint ¶ 6; Answer ¶ 6.

3.      The IUB is an administrative agency of the State of Iowa existing under and by virtue of Iowa Code ch. 474 and specifically charged with the enforcement of Iowa Code ch. 479A. See Complaint ¶ 7; Answer ¶ 7. The Court has previously dismissed the IUB as a party to this action.

4.      Diane Munns is the current Chairperson of the IUB and is a resident of the State of Iowa. See Iowa Utilities Board website, http://www.state.ia.us/government/com/util/util.html.

5.      Mark Lambert is a Member of the IUB and is a resident of the State of Iowa. See Iowa Utilities Board website, http://www.state.ia.us/government/com/util/util.html.

6.      Elliot Smith is a Member of the IUB and is a resident of the State of Iowa.[1] See Iowa Utilities Board website, http://www.state.ia.us/government/com/util/util.html.

## History of the Relevant Iowa Statutes and Administrative Rules

7.      199 Iowa Admin. Code ("IAC") chapters 9 and 12 are promulgated pursuant to and implement Iowa Code chapters 479, 479A and 479B. See 199 IAC chapters 9, 12; see also "Instructions for County Inspectors," p. 3 **[Appendix A]**; "IUB Ag Landowner Rights Pamphlet" **[Appendix B]**.

---

[1] Plaintiffs are filing, contemporaneous with their Motion for Summary Judgment and related papers, a Motion for Leave to Amend and a Second Amended Petition reflecting changes in the composition of the Board. Specifically, Allan Thoms left the Board and was replaced by Elliott Smith; Diane Munns has been named Chair.

8.     Iowa Code ch. 479A first was enacted by the Iowa Legislature in 1988 and subsequently was amended in material respects in 1995, 1999, and 2000. See Iowa Code Annotated chapter 479A; Complaint ¶ 30; Answer ¶ 30; see also "Instructions for County Inspectors," pp. 2-3 **[Appendix A]**.

9.     199 IAC ch. 12 first was adopted by the IUB in 1991 and subsequently was amended in material respects in 1997. See 199 IAC ch. 12; Complaint ¶ 31; Answer ¶ 31.

10.     199 IAC ch. 9 first was adopted by the IUB in 1980 and subsequently was amended in material respects in 1991, 1997, and 2001. See 199 IAC ch. 9; Complaint ¶ 32; Answer ¶ 32; see also "Instructions for County Inspectors," p. 2-3 **[Appendix A]**.

### Plaintiffs' Negotiated Easement Contracts with Iowa Landowners

11.     To obtain land across which they can build interstate pipelines, Plaintiffs contract with local landowners for easements. See, e.g., Sample Easement Contracts **[Appendix C]**.

12.     These easement contracts, while numbering in the hundreds per Plaintiff company, generally follow a few standard forms which are used over time. **[Appendix C]**.

13.     Some of the Plaintiffs' easement contracts date back to 1931. See Sample Easement Contracts at p. 0001-0002. **[Appendix C]**

14.     Plaintiffs' easement contracts address issues including, but not limited to:

    (a)     damages paid to landowners **[Appendix C, all contracts]**;

    (b)     depth of cover **[e.g., Appendix C at 0009-0011, 0012-0014, 0014-0018, 0032-0033, 0034-0035]**;

    (c)     surface conditions **[e.g., Appendix C at 0012-0014; 0014-0018, 0032-0033; 0034-0035]**;

(d)     perpetual nature of easement [**e.g., Appendix C at 0012-0014; 0014-0018; 0019-0031**]; and

(e)     topsoil protection, rocks, and drain tile [**Appendix C at 0019-0032; 0034-0035**].

### The Comprehensive Federal Regulatory Scheme

15.     The federal government regulates interstate natural gas pipelines through the following non-exhaustive list of mechanisms:

(a)     Natural Gas Act, 15 U.S.C. §§ 717-717w (scope of regulations indicated by Table of Contents [**Appendix D at 1**]);

(b)     Natural Gas Pipeline Safety Act, 49 U.S.C. §§ 60101-60128 (scope of regulations indicated by Table of Contents [**Appendix D at 4**]);

(c)     Natural Gas Policy Act, 15 U.S.C. §§ 3301-3432 (scope of regulations indicated by Table of Contents [**Appendix D at 6**]);

(d)     National Environmental Policy Act, 42 U.S.C. §§ 4321-4370a (scope of regulations indicated by Table of Contents [**Appendix D at 9**]);

(e)     18 C.F.R., including but not limited to sections 157, 284 and 380 (scope of regulations indicated by Tables of Contents [**Appendix D at 12**]);

(f)     49 C.F.R. parts 190-199 (scope of regulations indicated by Tables of Contents [**Appendix D at 21**]);

(g)     FERC Plans, such as the Upland Erosion Control, Revegetation and Maintenance Plan [**Appendix E**];

    (h)    FERC Orders, see, e.g., In re Independence Pipeline Company et al, Docket CP97-315-000/001 (and others), "Interim Order" (FERC, Dec. 17, 1999) **[Appendix F]** (particularly pages 64-75, considering environmental issues including concerns of the Illinois Department of Agriculture regarding agricultural lands); and

    (i)    Federal Environmental Assessments, see, e.g., "Northern Border Pipeline Company Project 2000 Environmental Assessment" **[Appendix G]**.

FERC's own interpretation of its jurisdiction extends to interstate natural gas transportation and pipeline construction, see FERC website **[Appendix H]**; FERC also considers environmental issues, including soil, vegetation, and more in the course of its regulating. See "An Interstate Natural Gas Facility on My Land?" **[Appendix I]**; see also Defendants' Response to Interrogatory 6 **[Appendix J]**(admitting that FERC filings must address, among many other things, "vegetation; . . . soils and drainage systems; [and] land use. . ."); "Instructions for County Inspectors," p. 2 **[Appendix A]** ("[FERC] has some guidelines, and for major interstate natural gas projects land restoration may be considered. . .").

### Defendants' Attempts to Regulate Federally-Regulated Interstate Pipelines

16.    Defendants, through and pursuant to Iowa Code chapter 479A and 199 IAC chapters 9 and 12, purport to regulate interstate natural gas pipeline construction, including but not limited to the areas of damage payments and land restoration, including the issues of topsoil protection, rock, drain tile, soil compaction, and others. See, e.g., "IUB Ag Landowner Rights Pamphlet" **[Appendix B]**.

17.    Defendants require a project-specific land restoration plan to be filed for state review even where the interstate pipeline project is subject to FERC certification. See "Instructions for County Inspectors," at 9 **[Appendix A]**; "IUB Ag Landowner Rights Pamphlet" **[Appendix B]**.

### Defendants' Denial of Waiver Request by Northern Natural

18.    On August 21, 2001, Plaintiff Northern Natural filed a request for a waiver of certain requirements of the amended Board Rules in 199 IAC chapter 9 in association with an interstate pipeline construction project near DeWitt, Iowa. The pipeline was approved by the Federal Energy Regulatory Commission ("FERC") by way of a blanket certificate of public convenience and necessity, and governed by FERC through, among other ways, Northern Natural's agreement to follow FERC's "Upland Erosion Control, Revegetation and Maintenance Plan." ("FERC Plan"). See Request for Expedited Waiver **[Appendix K]**.

19.    The Office of Consumer Advocate objected to the requested waiver on August 23, 2001. See Resistance to Request for Expedited Waiver **[Appendix L]**

20.    On August 31, 2001, the members of the Board voted to deny Northern Natural's waiver. Among the reasons given in the Order, a key rationale is that "the FERC Plan does not require restoration of the affected land to a condition as good as or better than provided in the Board's rules." See Order Denying Request for Waiver at 5 **[Appendix M]**.

### Defendants Concede Pre-Existing Easement Contracts Are Impaired

21.    Plaintiffs' Sample Easement Contracts meet the applicable requirements of federal law. See Defendants' Response to Interrogatory 1 **[Appendix J]**.

22.    Defendants' concede that Plaintiffs' Sample Easement Contracts raise "potential compliance issues" with Iowa Code chapter 479A, and 199 IAC chapters 9 and 12, including

inconsistencies with the reversion provision of Iowa Code § 479A.27 and the damages provisions of Iowa Code § 479A.24.  <u>See</u> Defendants' Response to Interrogatories 2, 3, and 4 **[Appendix J]**.

Because these material facts are not in dispute, and as applied to the applicable law as set forth in Plaintiffs' Brief in Support of their Motion for Complete Summary Judgment, the Court should grant summary judgment in favor of Plaintiffs.

PHILIP E. STOFFREGEN
HELEN C. ADAMS
BRET A. DUBLINSKE
OF
DICKINSON, MACKAMAN, TYLER & HAGEN, P.C.
1600 Hub Tower, 699 Walnut Street
Des Moines, Iowa  50309-3986
Telephone:  (515) 244-2600
FAX:  (515) 246-4550
pstoffre@dickinsonlaw.com
hadams@dickinsonlaw.com
bdublins@dickinsonlaw.com

ATTORNEYS FOR
NORTHERN NATURAL GAS COMPANY
AND NORTHERN BORDER PIPELINE COMPANY

OF COUNSEL:

JAMES R. TALCOTT
Northern Natural Gas Company
1111 South 103rd Street
Omaha, Nebraska 68124-1000
(402) 398-7003
(402) 398-7426 FAX
Jim.talcott@dynegy.com

THOMAS LEHAN
Northern Border Pipeline Company
13710 FNB Parkway
Omaha, Nebraska 68154
(402) 398-7701
(402) 398-7780 FAX
Tom.lehan@nborder.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the document attached to this Certificate was hand delivered to the persons listed below at the addresses indicated on the ___12___ day of _November_, 2002.

Alan Kniep
David Lynch
Iowa Utilities Board
350 Maple Street
Des Moines, Iowa  50319

_Kristyn R. Coy_

F:\BDUBLINS\WP\nng-iub-msjfacts.wpd