IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NORTHERN NATURAL GAS COMPANY AND NORTHERN BORDER PIPELINE COMPANY, | ) ) ) | |
| | ) | CIVIL ACTION |
| Plaintiffs, | ) ) | |
| vs. | ) ) | NO. 4:01-CV-70473 |
| | ) | |
| DIANE MUNNS, MARK O. LAMBERT, and ELLIOTT SMITH, individually in their official capacity as Board members, | ) ) ) ) | DEFENDANT BOARD MEMBERS' BRIEF IN RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) ) ) ) | |

## TABLE OF CONTENTS

INTRODUCTION ................................................................. 2

ARGUMENT ..................................................................... 3

I.  THE IOWA LAWS ARE NOT PREEMPTED ............................................ 3

    A.  The Natural Gas Act does not expressly preempt the Iowa laws ..................... 3

    B.  The Iowa laws are not superseded by implied preemption ................................ 5

    C.  The Iowa laws do not conflict with the Federal statutes and regulations ........... 8

II.  THE IOWA LAWS HAVE NOT IMPAIRED PLAINTIFFS' PRE-EXISTING EASEMENTS ................................................................. 12

III.  RELIEF AND REMEDIES UNDER 42 U.S.C. § 1983 ARE NOT APPROPRIATE IN THIS CASE ........................................................... 15

CONCLUSION .................................................................. 18



Defendants Diane Munns, Mark O. Lambert, and Elliott Smith, individually in their official capacity as members of the Iowa Utilities Board, submit this brief in response to the motion for summary judgment filed on November 12, 2002, by Plaintiffs Northern Natural Gas Company and Northern Border Pipeline Company.

## INTRODUCTION

Plaintiffs' arguments in this case can be boiled down to one key point: They believe that when they construct an interstate natural gas pipeline across Iowa farmland, they should not be required to take the steps necessary to protect and restore Iowa's valuable, irreplaceable topsoil. They believe that the general land restoration standards of the Federal Energy Regulatory Commission (FERC) represent the maximum that can be required of interstate gas pipeline construction activities. However, there is nothing in the FERC's standards that preempts state efforts to require more protective land restoration standards when the state believes such standards to be appropriate; instead, the FERC guidelines clearly contemplate additional state standards for precisely this purpose.

Iowa has adopted more protective land restoration standards, by statute (Iowa Code chapter 479A) and by rule (199 Iowa Admin. Code chapter 9). These Iowa laws are not expressly or impliedly preempted by federal law; in fact, they do not even conflict with federal law to any significant degree. Moreover, the Iowa laws do not impair Plaintiffs' pre-existing easements in violation of the Contracts Clause because to the extent any impairment exists, it is not substantial and is supported by a substantial and legitimate public purpose, specifically the protection of Iowa's topsoil during pipeline construction activities. Finally, no relief or remedies are appropriate under 42 U.S.C.

§ 1983 in this case because the Iowa laws are not preempted and the Federal laws do not create rights enforceable through § 1983.

For these reasons, Plaintiffs' motion for summary judgment should be denied.

## ARGUMENT

I.    **THE IOWA LAWS ARE NOT PREEMPTED**

A.    The Natural Gas Act does not expressly preempt the Iowa laws

Plaintiffs argue that the Natural Gas Act expressly preempts state regulation of interstate transportation of gas and interstate gas pipeline facilities.  (Plaintiffs' brief at pages 6-9.)  That may be true, but it is irrelevant.  The Iowa laws do not purport to regulate interstate transportation of gas or interstate gas pipeline facilities.  There is nothing in Iowa Code chapter 479A or in the Board's rules that says anything about how gas may be transported in interstate commerce, what type of pipe should be used, how deep it should be buried, the pressure at which it should be operated, or any other subject relating to the interstate transportation of gas or the facilities used for that purpose.  Instead, the Iowa laws are addressed to the environmental impact of pipeline construction on the soil that surrounds the pipeline, and specifically to the topsoil that must be trenched up, set aside, and then replaced during and after construction of an underground pipeline; the drainage facilities that must be broken, protected, and repaired during those same construction activities; and, to a very limited extent, to the easements that the pipeline must have across Iowa farmland.  These subjects are not expressly preempted by federal law.

The cases cited by Plaintiffs that find federal preemption all involve state efforts to regulate the sale and transportation of gas in interstate commerce.  ANR Pipeline Co. v. Iowa State Commerce Comm'n, 828 F.2d 465 (8th Cir. 1987) and Kinley Corp. v. Iowa

Utilities Bd., 999 F.2d 354 (8th Cir. 1993) both involved state efforts to regulate safety aspects of interstate pipelines (natural gas pipelines and hazardous liquids pipelines, respectively); the courts found preemption by the Natural Gas Pipeline Safety Act and the Hazardous Liquids Pipeline Safety Act.  Notably, however, the ANR Court indicated that the Natural Gas Act and the Natural Gas Pipeline Safety Act do not specifically preempt Iowa's regulation of agricultural land restoration during and after pipeline construction, see ANR Pipeline, 828 F.2d at 473.

Plaintiffs' other cases are equally distinguishable, because each one involves a situation in which an attempted state regulation presented an imminent, substantial probability of a direct conflict with federal law, a factor that is not present in this case. Thus, Schneidewind v. ANR Pipeline Co., 485 U.S. 293 (1988), involved a state regulation that required pipelines to obtain state approval before issuing long term securities.  However, FERC's issuance of a certificate of public convenience and necessity already included an assessment and approval of the project's financing.  This presented the imminent possibility of a conflict, as it was possible that the state would deny approval to issue securities that the FERC had already determined to be appropriate, effectively stopping a FERC-approved project.

Public Utilities Comm'n of California v. FERC, 900 F.2d 269 (D.C. Cir. 1990), also involved a direct conflict, as the state commission sought to regulate the delivery of natural gas in an interstate project already approved by the FERC.  Again, if the state commission were to deny delivery authority to the project, there would be a direct conflict with the FERC decision to approve the project.

Another case cited by Plaintiffs, Guardian Pipeline L.L.C. v. 529.42 Acres of Land, 210 F.Supp.2d 971 (N.D. Ill. 2002), is also irrelevant, although for different

4

reasons.  The case involves a pipeline's efforts to confirm its condemnation of certain

easements under federal law and is addressed to the District Court's jurisdiction, not to

preemption.  Specifically, the Court concludes that it lacks jurisdiction to review the

validity of the FERC certificate itself, since that review is the exclusive province of the

appropriate Court of Appeals.  210 F.Supp.2d at 974.  The case stands only for the

proposition that, to the extent the affected landowners took issue with the FERC's

minimum land restoration requirements, they should have appealed the FERC order

directly, rather than try a collateral attack during the condemnation proceedings.

Thus, each of the cases relied upon by Plaintiffs is irrelevant to this matter,

usually because they involve situations in which the state law in question presented an

imminent, substantial probability of a direct conflict with federal law.  However, as will be

discussed in section I.C of this brief, below, the Iowa laws do not present any such

conflict with federal law.

B.    The Iowa laws are not superseded by implied preemption

Plaintiffs argue that in the absence of express preemption, the Iowa laws are

subject to implied preemption because the federal regulations occupy the field or the

state standards interfere with the standards and objectives of the federal government.

(Plaintiffs' brief at pages 9-14.)  The Plaintiffs' argument makes passing mention of other

federal statutes, but specifically relies only on the FERC regulations at 18 C.F.R. § 157

and Part 380. However, an examination of those rules reveals that they do not occupy

the field of agricultural land restoration or establish federal standards or objectives with

which state standards might interfere.  Instead, the FERC regulations specifically

contemplate additional state and local regulation that augments the minimum federal

land restoration standards.

For example, the FERC Plan, found at Appendix E to the Plaintiffs' motion for summary judgment, provides in Section I.A in relevant part as follows:

> Deviations that involve measures different from those contained in this Plan will only be permitted as certified by the Commission or by written approval of the Director of the Office of Pipeline Regulation (OPR), or his/her designee, ***unless specifically required in writing by another Federal, state, or Native American land management agency for the portion of the project on its land***.

(Plaintiffs' Appendix E, page 1, emphasis added.)  Similarly, Section II.B of the FERC Plan provides:

> The project sponsor shall file with the Secretary all written requirements from Federal, state, or Native American land management agencies regarding erosion control, revegetation, or maintenance for the project that deviate from this Plan.

(Plaintiffs' Appendix E, page 2.)  Section III.B of the FERC Plan requires that an Environmental Inspector ensure compliance with the Plan, the environmental conditions of the FERC certificate, the mitigation measures proposed by the applicant in its application, "and other environmental permits and approvals...." (Id.)  This language represents the very opposite of implied preemption; instead, it is express recognition that state agencies (such as the Iowa Utilities Board, in this case) may have their own requirements addressing precisely the same subject matter as the FERC Plan, in order to address particular local concerns.

The FERC regulations also recognize the ability of state and local agencies to regulate the environmental impacts of underground pipeline construction.  18 C.F.R. § 380.3(b)(3) requires that applicants under this section consult with the appropriate state and local agencies to identify potential environmental impacts, while § 380.3(b)(4) requires that the applicant submit applications for "all Federal and State approvals as early as possible in the planning process."  Again, this language is totally inconsistent

with any notion of implied preemption, as it clearly contemplates the existence of additional State approvals.

As in the previous section of their brief, Plaintiffs cite several cases in support of their implied preemption arguments, but once again each case involves preemption of state regulations that directly conflict with a federal law. Tennessee Gas Pipeline Co. v. Massachusetts Bay Trans. Auth., 2 F.Supp.2d 106 (D. Mass. 1998), for example, involved a state statute that prohibited the exercise of eminent domain to take the property of a railroad company. The Court first found that the state statute, by its own terms, did not apply to federal eminent domain authority, but went on to say that if the statute were to apply, it would be preempted, because a prohibition of access to the property where the pipeline must go is a prohibition of the pipeline itself, a direct conflict with the federal finding that the pipeline is required by the public convenience and necessity. (2 F.Supp.2d at 111.) This actual conflict between state and federal law meant the state law would have been preempted, if it had applied.

National Fuel Gas Supply Co. v. Public Service Comm'n of New York, 894 F.2d 571 (2nd Cir. 1990), involved a state's site-specific environmental review that could block or prevent the construction of a federally-approved project; moreover, the record contained substantial evidence that the state review requirement was being used to delay the project in order to gain leverage in order to require relocation of the pipeline. 894 F.2d at 576-77. Because of this direct conflict, the state's review requirement was barred by federal preemption.

Similarly, Algonquin LNG v. Loqa, 79 F.Supp.2d 49 (D. R.I. 2000), involved a challenge to a municipal zoning ordinance that prohibited certain modifications to an existing liquefied natural gas facility, modifications for which the FERC had already

issued a certificate. Clearly, the federal and municipal law were in conflict as to whether the project should proceed and the municipal ordinance was preempted. (79 F.Supp.2d at 52.) Again, this is a case that turns on an actual conflict between federal and state law that threatened the very completion of the project, a situation that is not present in this case. However, Algonquin is relevant to this case for the following proposition:

> Finally, it should be noted that interstate gas facilities are not entirely insulated from local regulation. State and local laws that have only an indirect effect on interstate gas facilities are not preempted. *See Schneidewind,* 485 U.S. at 308, 108 S.Ct. 1145; *ANR Pipeline,* 828 F.2d at 474. Moreover, local regulation with respect to matters or activities that are separate and distinct from subjects of federal regulation may be permissible if they do not impede or prevent the accomplishment of a legitimate federal objective.

79 F.Supp.2d at 52-53. As will be discussed in the next section of this brief, the Iowa laws at issue in this case have, at most, only an indirect effect on interstate gas facilities and are not preempted.

C.    The Iowa laws do not conflict with the Federal statutes and regulations

The Iowa laws at issue in this case do not present any significant possibility of direct conflict with the federal statutes and regulations identified by Plaintiffs. There is nothing in Iowa Code chapter 479A or the Board rules that creates an actual conflict with federal law.

Plaintiffs cite Iowa requirements relating to topsoil segregation, drain tile damage, and rock removal as "provisions of the state regulatory scheme that directly conflict with the decisions made in the federal regulations." (Plaintiffs' brief at page 13.) While these Iowa requirements are different from the federal land restoration requirements, they do not "directly conflict" with any federal policy decision and it is perfectly possible for a pipeline to comply with both the federal and state requirements.

Consider, for example, topsoil segregation.  The FERC Plan requires removal and segregation of topsoil to a depth of at least 12 inches; the Iowa regulation requires removal and segregation of topsoil up to a depth of 36 inches.  Compliance with the Iowa regulation is, and always will be, compliance with the FERC Plan requirements. Moreover, the burden associated with compliance with the Iowa regulation is really no different than the burden associated with the FERC Plan.  Both regulations require that a pipeline company segregate the soil removed from the construction trench into two separate piles; the only difference is how much soil goes in each of the piles.  (See Plaintiffs' Appendix A, page 14, for a drawing showing the proper separation of topsoil and other trench spoil.)

Similarly, the drain tile damage provisions do not create a conflict.  The Board rules require temporary repairs in most circumstances; if temporary repairs are not practical, then "the upstream exposed tile shall not be obstructed but shall nonetheless be screened or otherwise protected to prevent the entry of foreign materials and small animals in to the tile line system," 199 Iowa Admin. Code 9.4(2)(b)(4).  Plaintiffs claim this is inconsistent with the FERC Plan, but this is incorrect.  The FERC Plan does not address temporary repairs; instead, it is addressed only to permanent repair of damaged drain tile, which must be restored to original or better condition.  (Plaintiffs' Appendix E, page 7; FERC Plan Section V.C.3.)  There is no conflict between the state requirement of temporary repairs and preventing entry of foreign materials during the time the tile is open, on the one hand, and the federal requirement that the permanent repairs restore the tile to its original or better condition, on the other; in fact, proper temporary repairs and screening will assist in compliance with the federal requirements.

Rock removal is also an area where there is no direct conflict and no possibility that the state requirement will interfere with a federal decision or goal.   The FERC Plan requires that when cleaning up a pipeline construction area, the pipeline must remove excess rock from at least the top 12 inches of soil and must "make diligent efforts to removes stones greater than 4 inches if the off right-of-way areas do not contain stones greater than 4 inches.  The landowner may approve other rock size provisions in writing." (FERC Plan at Section VI.A.4; Plaintiffs' Appendix E, page 11.)  The Iowa regulations require that after the topsoil is backfilled, it shall not contain rock larger than three inches in average diameter, to the extent such rock was not native to the topsoil prior to excavation.  (199 Iowa Admin. Code 9.4(3)(a).)  Obviously, it is not impossible for a pipeline to comply with both requirements; removal of all non-native rock in excess of 3 inches in diameter will satisfy the federal and state regulations.  Moreover, the more stringent Iowa requirement does not interfere with any federal objective or decision; there is no federal interest in having 3.5 inch non-native rocks remain in the topsoil after pipeline construction.  While the two regulations are not entirely consistent, they do not conflict, and no federal decision is threatened by the Iowa regulation.

Plaintiffs also point to the Iowa statute requiring reversion of abandoned easements as a conflict.  Once again, there is no possibility of a conflict between the Iowa requirement and the federal statutes and regulations, in this case because the Iowa statute expressly requires federal approval before the Iowa statute will apply.  Iowa Code § 479A.27 provides, in relevant part, as follows:

> 1.  If a pipeline right-of-way, or any part of a pipeline right-of-way, is wholly abandoned for pipeline purposes by the relocation of the pipeline, is not used or operated for a period of five consecutive years, or if the construction of the pipeline has been commenced and work has ceased and has not been in good faith resumed for five years, the right-of-way may revert as provided in this section to the person who, at the time of the abandonment or nonuse, is the

owner of the tract from which such right-of-way was taken. ***Abandonment of pipeline facilities requires approval from the federal energy regulatory commission prior to this provision taking effect.***

\* \* \*

4. Upon reversion of the easement, the landowner may require the pipeline company to remove any pipe or pipeline facility remaining on the property ***to the extent such removal is in accordance with the terms of the abandonment authority from the federal energy regulatory commission.*** Provisions of this chapter relating to damages shall apply when the pipeline is removed.

(Emphasis added.)  Clearly, there can be no conflict between the federal and state requirements when the state requirement, by its very terms, requires federal approval before the state requirement can take effect.

Some state regulations have been found to be preempted because of evidence that the state intended to use procedural delays to gain leverage over otherwise-preempted aspects of a pipeline project, see National Fuels and Kern River, above. Plaintiffs in this case have not even alleged such motives on the part of Iowa, and in fact there are no such motives.  Instead, the Board's agricultural land restoration rules were drafted to fit within the FERC's schedule to the maximum extent possible; there is no possibility of conflict through regulatory delay.

Finally, the Board's land restoration regulations present no possibility of blocking or prohibiting construction of a federally-approved facility.  The Board's rules allow a county inspector to issue a so-called "stop-work" order if a pipeline company is violating the terms of its land restoration plan, but the "stop-work" terminology is a misnomer. The order does not shut down the entire construction project; it only seeks to postpone specific acts (such as backfilling of a drain tile repair) until the problem can be corrected. All other construction activities can continue.  Moreover, the company may proceed with its work over the inspector's objection, at which time the county board of supervisors

must decide whether to file and prosecute a complaint before the Iowa Utilities Board. (Plaintiffs' Appendix A, page 8.)

The federal regulation of interstate natural gas facilities is undeniably extensive. However, it does not preempt all possible state action with respect to such facilities. As the <u>Algonquin</u> Court said, "State and local laws that have only an indirect effect on interstate gas facilities are not preempted." (79 F.Supp.2d at 53, citations omitted.)  The Iowa laws at issue in this case have, at most, an indirect effect on interstate gas facilities; they are not preempted.

## II.  THE IOWA LAWS HAVE NOT IMPAIRED PLAINTIFFS' PRE-EXISTING EASEMENTS

Plaintiffs assert that the Iowa laws impair their pre-existing easement contracts in violation of the Contracts Clause.  (Plaintiffs' brief at pages 14-17.)  However, the Iowa laws do not substantially impair the easements; the state has a significant and legitimate public purpose behind its regulations; and the adjustment of the rights and responsibilities of the parties is based on reasonable conditions and is of a character appropriate to the public purpose.  For each of these reasons, the Iowa laws do not violate the Contracts Clause.

Plaintiffs claim their easement agreements are impaired by the Iowa laws relating to the damages they may owe to landowners, the construction and post-construction remediation requirements, and the abandoned easement reversion provisions of Iowa Code § 479A.27.  Each of these alleged impairments will be considered in turn.

As far as the provisions relating to damages and remediation requirements are concerned (and all other provisions of 199 Iowa Admin. Code chapters 9 and 12, for that matter), the Board's staff has indicated to Plaintiffs that, in staff's opinion, the sample easements provided by Plaintiffs are consistent with the requirements of chapters 9 and

12. (Defendants' response to Plaintiffs' Interrogatory No. 4, contained in Plaintiffs' Appendix J, page 10.) The staff's opinion is based on the provisions of Iowa Code § 479A.14(10) and 199 Iowa Admin. Code 9.6, which permit application of provisions for protecting or restoring property other than the provisions of chapter 9 or the pipeline's land restoration plan if those alternative provisions are contained in an easement or other agreement independently executed by the pipeline company and the landowner. Each of the sample easements provided by Plaintiffs appears to qualify under this provision, with the exception of the one easement that purports to create a perpetual easement. (Identified by Plaintiffs as Contract 0019.) Thus, the Plaintiffs' pre-existing easements are not impaired by any of the Board's land restoration requirements; Plaintiffs' assertion to the contrary is simply incorrect.

As far as the perpetual easement issue is concerned, the fact is that the impairment created by § 479A.27, if it is an impairment at all, is not substantial. As described in the previous section of this brief, an abandoned easement reverts to the property owner only if the FERC has approved the abandonment, see § 479A.27(1). FERC abandonment proceedings are initiated by the pipeline company, see 18 C.F.R. § 157.18; thus, no reversion of the easement will take place unless the pipeline company itself first applies for, and then receives, FERC approval to abandon the facilities. If this is an impairment of the Plaintiffs' rights, it is not a significant one; the Plaintiffs are in complete control of whether the provision will ever apply to their particular situation.

The requirement of FERC approval also provides a complete answer to Plaintiffs' claim that the Iowa regulations represent an unlawful taking without due process and just compensation. (Plaintiffs' brief at page 16.) The pipeline company will have ample opportunity to assert its interests in the FERC proceedings (although one struggles to

imagine why the pipeline company would initiate an abandonment proceeding only to contest the consequences of abandonment). Moreover, § 479A.27 sets out an extensive state procedure to be followed before reversion may be effective, including written notice of proposed reversion to all affected persons, including the pipeline, and an opportunity for any person to contest the reversion within 120 days of service of the notice. (§ 479A.27(2).) This provides the pipeline company with yet another opportunity to make its case, if (for some reason) it wants to abandon its facilities but also wants to maintain its easement.

Next, if there were a significant impairment, it would be justified by a significant and legitimate public purpose. The public interest favors productive use of limited resources; it is for this reason that concepts such as adverse possession, easements by prescription, and similar provisions became a part of the common law. The property rights of a party that is actually using property, under appropriate circumstances, are favored over the claims of a person who is not using the property. The same public policies that underlie adverse possession and prescriptive easements support a reversion provision when an easement holder abandons and fails to use its easement rights.

Finally, Iowa's adjustment of the rights and responsibilities of the contracting parties is reasonable and appropriate in light of the public purpose being served. The pipeline company's easement reverts to the landowner only after the pipeline has unambiguously expressed its intent to abandon its facilities in the easement, and even then only after the FERC has approved the pipeline company's plans. There will not be any accidental or inadvertent reversion of a pipeline easement that is still needed by the

pipeline company; the only reversions will be those that the pipeline company has already determined it does not need.

Thus, the Iowa statutes and regulations do not impair Plaintiffs' pre-existing easements and therefore do not violate the Contracts Clause. Plaintiffs' motion for summary judgment based on the alleged Contracts Clause violations should be denied.

## III. RELIEF AND REMEDIES UNDER 42 U.S.C. § 1983 ARE NOT APPROPRIATE IN THIS CASE

First, the Board members are not subject to relief under 42 U.S.C. § 1983 because, as described in the preceding sections of this brief, they have not subjected the Plaintiffs to deprivation of any rights, privileges, or immunities secured by the Constitution or federal law. Beyond that point, however, the Plaintiffs' claims under § 1983 are barred because the Supremacy Clause does not create individual rights that may be vindicated in an action for damages under § 1983. Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 107-08 (1989). Section 1983 speaks in terms of "rights, privileges, or immunities," not violations of federal law; so the federal provision forming the basis of a § 1983 claim must confer federal rights on the plaintiff, that is, obligations binding on the governmental unit. Id. The Supremacy Clause is not a source of any federal rights; it secures other federal rights when they conflict with state law. Id.

Plaintiffs claim that they have a federal right under the NGA, NGPSA, NGPA, and NEPA to be free from state regulation of their interstate pipeline construction, operation, and maintenance. However, they cite no specific statutory provisions to support this claim; instead, they refer only to five large federal acts in general and apparently expect the Court to sort out their specific rights thereunder. Their lack of specificity may very

well be a result of the fact that the cited statutes to not confer relevant federal rights on the Plaintiffs.

The Golden State test for determining whether a § 1983 remedy is available involves a two-step inquiry.  The first step has three subparts:  First, whether the plaintiff is the intended beneficiary of the statute; Second, whether there is sufficient mandatory language in the statute to create a binding obligation on the state; and Third, whether the statute's language is too vague and amorphous to enforce a right via § 1983.  Little Rock Family Planning Services, P.A., et al., v. Dalton, 60 F.3d 497, 502 (8th Cir. 1995).  If that test is satisfied, a rebuttable presumption results.  Boston & Maine Corp. v. Town of Ayer, 206 F.Supp.2d 128, 131 (D. Mass. 2002).  The second step is a determination of whether Congress has foreclosed § 1983 enforcement, either explicitly or impliedly through a comprehensive enforcement scheme.  Plaintiffs have not shown the first step of the Golden State test is met by any of the statutes they have cited, so there is no need to reach the second step.

Plaintiffs attempt to meet the first subpart by claiming interstate natural gas pipelines are the intended beneficiaries of the NGA policy goal of uniformity of regulation, relying on Loqa, 79 F.Supp. 2d at 52.  However, that NGA goal is limited to regulation of the transportation and sale of natural gas in interstate commerce; the very same case that Plaintiffs rely upon holds that the NGA policy does not apply to state and local laws that have only an indirect effect on interstate gas facilities, Id. at 53, citing Schneidewind, 485 U.S. at 308, and ANR Pipeline, 828 F.2d at 474.  Plaintiffs may, or may not, be one of the intended beneficiaries of a federal policy favoring uniformity of interstate transportation and sale regulation, but they are not, and have not even alleged

that they are, intended beneficiaries of any federal law relating to agricultural land restoration.

The courts have already determined that any right an interstate gas pipeline company's may have to not be regulated by the states does not extend to environmental regulations.  See, for example, ANR Pipeline Co. v. Iowa State Commerce Comm'n, 828 F.2d 465, 473 (8th Cir. 1987), stating:

> Although the question is not before us, we note that regulations concerning the environmental impact of pipeline construction are not specifically preempted by the language of either the NGPSA or the NGA.  Thus, Iowa may be able to enact legislation to protect its valuable topsoil and other aspects of the environment, and to provide private damage remedies, as long as state regulations do not conflict with existing federal standards.[7]  See Pacific Gas, 461 U.S. at 216 n. 28.
>                                           * * *
> n7.  Indeed, although there are a significant number of federal environmental regulations applicable to gas pipelines under the NGA, see, e.g., 18 C.F.R. §§ 157.14(1)(6-d); 157.206(d); Part 157, Subpart F, Appendix I (1987), certain sections of the regulations appear to anticipate such state regulation, see, e.g., 18 C.F.R. Part 2, Appendix B, paras. 9.2, 9.3 (1987).

Plaintiffs cannot claim to the intended beneficiary of a federal policy that does not exist; and the federal government has not adopted a policy in favor of uniformity of environmental regulation of pipeline construction.

The second subpart of the Golden State test is whether there is sufficient mandatory language in the federal statute to create a binding obligation on the state. Plaintiffs rely on the same alleged "right not to be regulated," without specific statutory citation, but as shown above they have no such right with respect to environmental regulations intended to preserve topsoil or private damage remedies.  Plaintiffs cannot satisfy the second subpart of the Golden State test.

The third subpart of that test is whether the federal statute's language is too vague and amorphous to enforce a right under § 1983.  Plaintiffs have not even

identified relevant statutory language for the Court to consider in this connection; their reliance on the NGA in general fails to satisfy this part of the <u>Golden State</u> test.

Thus, even if the Iowa Utilities Board's land restoration rules were preempted by federal law pursuant to the Supremacy Clause (which they are not), the fact remains that the Plaintiffs are not entitled to relief under § 1983 because the underlying federal statutes fail to satisfy the <u>Golden State</u> test.

## CONCLUSION

The Iowa Code chapter 479A and the Board's agricultural land restoration rules, 199 IAC chapters 9 and 12, were enacted and adopted in response to the specific invitation of the Eighth Circuit Court of Appeals in <u>ANR Pipeline</u>.  Plaintiffs are fighting the wrong battle; they rely on statutes that concern regulation of interstate gas pipelines to challenge state environmental laws that only affect the pipeline incidentally, at most. Such regulations are not preempted.  Further, the Plaintiffs claim the Iowa laws impair their pre-existing easements in violation of the Contracts Clause even though the Defendants have stated that, with one insignificant exception, the Plaintiffs' pre-existing easements that were provided to Defendants are, as written, consistent with the

requirements of the Iowa laws. If the contract terms have not been changed, then there can be no impairment of the contracts.  Accordingly, the Court should deny Plaintiffs' motion for summary judgment on all counts.

Respectfully submitted,

David J. Lynch
Deputy General Counsel
Iowa Utilities Board
350 Maple Street
Des Moines, Iowa  50319-0069

ATTORNEY FOR DEFENDANTS
DIANE C. MUNNS, MARK O.
LAMBERT, AND ELLIOTT SMITH,
INDIVIDUALLY IN THEIR OFFICIAL
CAPACITY AS MEMBERS OF THE IOWA
UTILITIES BOARD

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the document attached to this

Certificate was hand-delivered to the persons listed below at the addresses indicated, on

the 3RD day of December, 2002.

> Philip E. Stoffregen
> Helen C. Adams
> Bret A. Dublinske
> of
> DICKINSON, MACKAMAN, TYLER & HAGEN, P.C.
> 1600 Hub Tower, 699 Walnut Street
> Des Moines, Iowa  50309-3986

David J. Lynch
Deputy General Counsel